UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FIRST ON FIRST DELI.,

        -and-

YASIN ALGABYALI, as Owner                          **COMPLAINT**


        Plaintiffs,

    -against-


 UNITED STATES OF AMERICA

        Defendant
------------------------------------------------------------------X

1

Plaintiffs the First on First Deli (the "Store"), and Yasin Algabyali, (the "Individual Plaintiff", and collectively, the "Plaintiffs") through their attorneys, SPODEK LAW GROUP, P.C., respectfully allege as follows:

## NATURE OF THE CLAIM

1.      This is an action seeking and judicial review of an order (the "Order") from the Supplemental Nutrition Assistance Program ("SNAP") imposed by the Food and Nutrition Services ("FNS") permanently disqualifying Plaintiffs from participating in the food stamp program for based on alleged violations of regulations prohibiting trafficking of SNAP benefits, and pursuant to 7 U.S.C. § 2023(a)(13), asserting claims for a trial *de novo* of a final agency decision by the United States Department of Agriculture-FNS.

2.      Jurisdiction of this Court is invoked pursuant to 7 U.S.C. §§ 2011, et seq. and, more specifically, 7 U.S.C. § 2023(13).

3.      The Store, which is the subject of the Order of the United States Department of Agriculture, is in the County, City and State of New York, which is within the jurisdiction of the United States District Court for the Southern District of New York.

4.      This Court is empowered to review the Order pursuant to 7 U.S.C. § 2023.

## THE PARTIES

5.      Plaintiff First on First Deli is a market with a principal place of business at 1756 First Avenue, New York, New York 10128.

6.      Individual Plaintiff Yasin Algabyali is an individual who resides within the State of New York and is owner of the Store.

7.      Defendant United States of America (the "Defendant") is formed, maintains and

controls the United States Department of Agriculture ("USDA" or "Department" or "Agency"), of which the Food and Nutrition Service is a subsidiary. The Food and Nutrition Service ("FNS") of the United States Department of Agriculture administers the Supplemental Nutrition Assistance Program ("SNAP") program by, in part, issuing Electronic Benefits Transfer (EBT) cards to eligible users who purchase eligible food items from retailers that the FNS authorizes as qualified SNAP participants. The retailer is reimbursed for each eligible EBT purchase.

## BACKGROUND
## FACTS

8.      At all relevant times, the Store was an authorized participant in the Supplemental Nutrition and Assistance Program, administered by the USDA's Food and Nutrition Services.

9.      After allegedly conducting an investigation into Plaintiffs from on or about November 2020 through January 2021, the Department levied charges against the Store relating to the alleged trafficking of SNAP benefits as demonstrated through allegedly irregular SNAP transaction data. *See*, Final Agency Decision, dated August 2, 2021 as **Exhibit A**.

10.     Specifically, the initial charges were bereft of specific allegations or affidavits indicating that a witness had actually seen the store or its personnel traffic. Instead, the charging letter set forth two categories of transactions which the Department believes to indicate the existence of trafficking: (1) repeat transactions by same household; and (2) large purchase transactions which were unsupported by the Store's food stock.

11.     On or about April 12, 2021 ("April 2021 Responses"), without the benefit of discovery, and limited to a little more than a week to compile a complete response to the Defendant's allegations, Plaintiffs responded to the initial charges, in writing, indicating that the

questioned transactions were largely a result of a combination of SNAP participant shopping

behavior in the Store and the issuance of credit to customers, who subsequently paid their

balances using SNAP benefits. Plaintiffs further sought leniency and explained that Plaintiffs

did not commit any of the alleged violations of SNAP, and furthermore, Plaintiffs had in place

policies and procedures to ensure that SNAP guidelines were followed, and thus were deserving

and eligible for a Civil Monetary Penalty (CMP).

13.     Plaintiffs also submitted documentary evidence to the Agency in the April 2021

Response in support of its contentions, including but not limited to credit ledgers, vendor

invoices and receipts, as well as statements from ownership, employees, and customers.

13.     By letter dated May 20, 2021 the USDA rendered its decision, permanently

disqualifying the Store from participation in SNAP, and denied Plaintiffs' request for a civil

monetary penalty.

14.     On or about May 24, 2020 Plaintiffs requested administrative review of the

Agency's May 20, 2020 decision.

15.     As such, on or about July 20, 2021 Plaintiffs (through counsel) submitted

additional documentation and corresponding explanations for why Plaintiffs had not trafficked

any SNAP benefits and instead, was the result of the aforementioned business practices, and that

regardless, it presented evidence which merited a CMP instead of disqualification.

16.     Notwithstanding Plaintiffs' appeal of this decision, On August 2, 2021 USDA

issued a final decision upholding the permanent disqualification from FNS.

17.     The general purpose of SNAP is to provide food benefits (formerly "food

stamps") to program participants who meet certain financial need requirements. SNAP

participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an EBT card, which conceptually functions similar to a debit card.

18.     Authorized SNAP retailers are governed by Defendant through 7 C.F.R. § 278.6 which in pertinent part permits the disqualification or suspension of retailers who violate SNAP regulations.

19.     Here in the instant matter, Plaintiffs have been charged by the Agency with trafficking in SNAP benefits. The term "trafficking" is defined at length by 7 C.F.R. § 271.2, which states in pertinent part that trafficking is: "(1) the buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; (2) the exchange of firearms, ammunition, explosives, or controlled substances, as defined in 21 U.S.C. §802, for SNAP benefits; (3) purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount; (4) purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; (5) intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or (6) attempting to buy,

sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic

Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by

manual voucher and signatures, for cash or consideration other than eligible food, either directly,

indirectly, in complicity or collusion with others, or acting alone." *See,* 7 C.F.R. § 271.2.

20.     Each of the transactions set forth in the Charging Letter were categorized and

selected by the Defendant's ALERT System computer program, which identifies specific

transaction types, including two of which are addressed herein:

> A.     Multiple transactions occurring from individual benefit accounts in
> "unusually" short periods of time;
>
> B.     "Excessively Large" transactions when compared to the Store's food
> stock.

21.     Plaintiffs did not engage in trafficking in SNAP benefits, defined, *supra*. Instead,

they issued credit to their customers. Additionally, Plaintiffs' customers shopping habits, in

addition to said issuance of credit, accounts for the allegedly suspicious transactions identified

by the ALERT System. Plaintiffs further possessed the requisite food stock to account for its

SNAP purchases, as aptly demonstrated to the Department during the administrative process.

22.     Furthermore, the Agency lacks any direct evidence (eye-witness accounts,

receipts, or the like) that trafficking occurred. Instead, the USDA has based its disqualification

upon data analysis, which is circumstantial by definition: evidence from which more than one

logical conclusion can be reached.

23.     Additionally, the Department does not have any statistical studies, data analysis,

or supporting evidence to show that either of the two of those categories to the SNAP violation

of "trafficking." In fact, the Defendants' Rule 30(b)(6) witness, Mr. Douglas Wilson, has previously testified on multiple occasions that those transaction categories are merely suspicious, and not in-and-of-themselves, indicative of trafficking.

24.     Furthermore, Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, indicated that the categories and transactions cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

25.     There is no statistically meaningful correlation between the two transaction categories and the act of "trafficking."

26.     Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution. This instant matter was just such a case.

27.     This process is not an impartial one, nor is it unbiased. As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits. Of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all of the cases. There is no impartiality in this process. It is an assembly line.

28.     Here, in the instant matter, Defendant did not interview the households engaged in the transactions, despite having the ability to do so. Defendant continued to rely upon data comparison with other stores that were not issuing credits, meaning that the final data analysis conducted by the Department was proverbially comparing apples to oranges, and accordingly, inaccurate; and Defendant did not conduct any research on household shopping and spending habits, specifically with the effect on participants' store loyalty, item selection,

purchase transaction frequency and transaction sizes.

29.     As such, the categories and transactions asserted by the Agency cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items. Again, Plaintiffs contend they issued credit to the Store's customers, and thus causing the transactions to be processed as they were.

30.     Defendant not only wrongly concluded that Plaintiffs were engaged in trafficking of SNAP benefits, but it so too erred in determining that Plaintiffs were ineligible for a CMP, as Plaintiffs provided conclusive evidence that it met the four criterion established at 7 C.F.R. § 278.6(i).

31.     Moreover, pursuant to 7 C.F.R. § 278.6(d), FNS in determining the appropriate penalty must consider (1) The nature and scope of the violations committed by personnel of the firm, (2) Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) Any other evidence that shows the firm's intent to violate the regulations.

32.     Plaintiffs has never been warned and never before been sanctioned for violation of SNAP laws or regulations. Plaintiff has never been denied SNAP payments or reimbursement based on any SNAP program violation.

33.     Plaintiffs are not aware, nor has he ever been notified or warned, of any irregularities in their compliance with SNAP laws or regulations that might warrant his store being targeted for a surreptitious investigation of his compliance.

34.     At no time between the Store's inception and the date of the disqualification decision did the FNS Regional Office consider issuing a warning letter as required by 7 C.F.R. § 278.6(d)(2).

35.     The Final Agency Decision did not find that the Regional Office complied with

7 C.F.R. § 278.6(d)(2) by considering prior efforts to warn plaintiff, or any of the other factors

enumerated at §278.6(d).

36.     The FNS made no specific findings as to carelessness or lack of supervision by

Plaintiffs, nor did it make a finding with respect to other evidence demonstrating intent by the

Store to violate SNAP regulations.

37.     The FNS did not find that the Plaintiffs personally participated in any alleged

unlawful SNAP transactions.

38.     The closure of the Store would also likely harm the community because it is an

integral part of the community shopping environment.

39.     Plaintiffs have exhausted its administrative remedies, and accordingly, are

entitled to a judicial trial *de novo* of the administrative action, and seeks reversal of the finding

of a SNAP violation and the disqualification of the Store from SNAP participation

## STATEMENT OF CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
**(For Judicial Review of the Order and Trial *de novo*)**

40.     Plaintiffs repeat, reiterate and reallege each and every allegation made in the

foregoing paragraphs, as if fully set forth at length herein.

41.     Under the laws governing the Act, a plaintiff is usually entitled to a trial *de novo*

by a court to "determine the validity of the questioned administrative action" as well as a trial

*de novo* of whether the FNS followed the Act and regulations in failing to credit Plaintiffs

assertion that not trafficking occurred and instead the Store issued credit to its customer, as well

as whether the violation resulted from carelessness or poor supervision, whether the Department considered any prior warnings to the Store, and whether FNS decision to impose said penalty was arbitrary and capricious. *See*, 7 U.S.C. § 2023.

42.     FNS failed to properly account for Plaintiffs' customers shopping habits, the Store's business practices (including the issuance of credit accounts to certain SNAP customers), and recorded food stock when it issued its determination that Plaintiffs had engaged in trafficking of SNAP benefits.

43.     Additionally, FNS violated its own regulations, 7 C.F.R. § 278.6(d)(2)-(3), which imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider prior action taken by FNS to warn the retailer about the possibility violations are occurring. The FNS never considered this prior action.

44.     Pursuant to 7 C.F.R. §§ 2023(13) and 2023(15), Plaintiff is entitled to a trial *de novo* on whether he violated a provision of the Act or a regulation under the Act, including trial *de novo* of whether the FNS followed the Act and regulations in finding the violation occurred as alleged.

45.     Plaintiffs have been aggrieved by the determination of the USDA and aver that the agency's findings are unsupported by reliable probative evidence and are otherwise the product of unlawful agency action.

46.     As such, the Order should be extinguished.

47.     Even if a trial *de novo* is not awarded, the penalty imposed was arbitrary and capricious.

48.     The Regulatory Flexibility Act, 5 U.S.C. § 601-612, requires agencies to analyze

the impact of rulemaking on small entities, such as the Store, and consider alternatives that would

minimize any significant impacts on a substantial number of small entities.

49.     Here, the guidelines purportedly followed by SNAP allow a civil monetary

penalty in lieu of a disqualification.

50.     In the instant case, Plaintiffs have clearly demonstrated their entitlement to a civil

monetary penalty in lieu of disqualification. As the administrative record reflects, Plaintiffs have

submitted evidence, including but not limited to training and compliance documentation and

statements from, customers, employees, and owner which satisfy the criteria necessary to qualify

for a civil monetary penalty.

51.     As such, the decision to not issue a civil monetary penalty in lieu of

disqualification was arbitrary and capricious

52.     Plaintiff respectfully requests that the court vacate the Final Agency Decision and

immediately reinstate the Plaintiff as a SNAP participant, because:

- The FNS violated its own regulations and thus cannot impose any sanction;
- FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of permanent disqualification;
- The permanent disqualification will cause hardship to SNAP recipients in the area surrounding the plaintiffs' store.

53.     Alternatively, the Court should either: find no sanction appropriate, but direct

issuance of a written warning; or reduce the disqualification to a reasonable civil money penalty.

54.     No prior relief has been requested.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following
relief:

A.      *De novo* review of the Order and the subsequent extinguishment thereof; or

B.      Extinguishment of the Order as FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of permanent disqualification without properly considering all statutory factors and by failing to accept Plaintiffs assertions and explanations as to the transactions identified in the Charge Letter; or

C.      An Order finding that FNS has acted arbitrarily and capriciously in denying Plaintiffs' request for a CMP, and that FNS should issue the CMP in lieu of disqualification; and

D.      Order Defendants to make whole Plaintiffs who lost revenues by not being able to collect monies through the SNAP program; and

E.      Grant such further relief as this Court deems necessary and proper in the public interest; and

F.      Order Defendants to reimburse Plaintiffs for all costs and fees associated with the commencement and prosecution of this lawsuit.

## JURY TRIAL
## DEMAND

Plaintiffs request a jury trial on all questions of fact raised by their complaint.

Dated:      New York, New York
            August 18, 2021

                                        SPODEK LAW GROUP, P.C.

                                        _____

BY: Jeremy G. Feigenbaum, Esq.
*Attorney for Plaintiffs*
85 Broad Street, 17th Floor
New York, NY 10004
(347) 292-8630
jf@spodeklawgroup.com
#JF2128